■ H. WAYNE FENTON, Respondent, v ROGER D. IVES, Appellant, et al., Defendant. [645 NYS2d 150] —Crew III, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered March 14, 1995 in Schoharie County, upon a verdict rendered in favor of plaintiff.

Defendant Roger D. Ives (hereinafter defendant) had a loan with the Bank of Richmondville (hereinafter the Bank) with an outstanding balance of $103,000 and an unsecured line of credit with an outstanding balance of approximately $40,000. The loan was secured by a drilling rig owned by defendant. Following defendant's default upon both obligations, defendant and the Bank entered into an agreement whereby the line of credit was converted into a 90-day note and defendant agreed to attempt to sell the drilling rig within that time in order to satisfy his obligations to the Bank. The note explicitly afforded the Bank the right of setoff.

Defendant defaulted upon the note and thereafter entered into an oral agreement to sell the drilling rig to plaintiff for $167,500. Pursuant to that agreement, plaintiff was to wire the $167,500 to the Bank. Subsequently, the Bank informed defendant that it intended to use the proceeds of the sale to satisfy the unsecured line of credit as well as the lien on the drilling rig. This presented defendant with unforeseen tax consequences, as a result of which he telephoned plaintiff, on the morning of the agreed-upon transfer date, and instructed plaintiff to wire $103,000 to the Bank and to pay the balance directly to defendant at the time plaintiff took possession of the drilling rig.

According to defendant, plaintiff agreed to change the method of payment; according to plaintiff, however, he told defendant that he would attempt to stop the wire transfer and make payment in accordance with defendant's request. Although plaintiff contacted his bank regarding this change, he was advised that the entire amount of the purchase price had already been wired to the Bank. When defendant learned of this, he contacted the Bank and requested that the moneys be

returned to plaintiff because there was not going to be a sale. The Bank declined to do so, and defendant refused to deliver the drilling rig to plaintiff.

Plaintiff commenced this action against, among others, defendant seeking replevin, specific performance and damages for breach of contract. A jury trial ensued and, at the close of the evidence, Supreme Court directed a verdict for plaintiff on the issue of liability. The jury thereafter returned a verdict awarding plaintiff damages in the amount of $20,202.66. Judgment was entered in the amount of $21,287.66, including costs and disbursements, and this appeal by defendant followed.

A party is entitled to a directed verdict when the trial court is "convinced that the jury could not find for the other side by any rational process" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4401:4, at 407; *see, Davies v Contel of N. Y.*, 187 AD2d 898, 899-900). However, a motion for a directed verdict may not be granted where, as here, resolution of disputed facts depend upon credibility determinations (*see,* 105 NY Jur 2d, Trial, § 295; *see also, Sadowski v Long Is. R. R. Co.*, 292 NY 448, 454-455). Here, a jury could rationally find for defendant if it credited his testimony that the method of payment had been modified by the mutual agreement of the parties and that plaintiff had failed to comply with such modification. Accordingly, Supreme Court improperly directed a verdict in plaintiff's favor. We have considered plaintiff's remaining contentions, including his assertion that Supreme Court's pretrial order directing seizure of the drilling rig from defendant constituted a determination that defendant breached the contract, and find them to be lacking in merit.

Mikoll, J. P., Mercure, White and Yesawich Jr., JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for a new trial.